**STATE of Iowa, Appellee,**

v.

**Ryan OETKEN, Appellant.**

No. 99–364.

Supreme Court of Iowa.

July 6, 2000.

Alfredo Parrish of Parrish, Kruidenier, Moss, Dunn & Montgomery, L.L.P., Des Moines, for appellant.

Thomas J. Miller, Attorney General, Thomas W. Andrews, Assistant Attorney General, Patrick C. Jackson, County Attorney, and Scott Schroeder, Assistant County Attorney, for appellee.

SNELL, Justice.

Defendant was convicted of second-degree burglary and adjudicated an habitual offender. He now appeals, challenging the sufficiency of the evidence, the propriety of the jury instructions, the jurisdiction of the trial court, and the effectiveness of counsel. We find no reversible error. The decision of the district court is affirmed.

## I. Background Facts and Proceedings

On September 25, 1998, defendant, Ryan Oetken, was indicted on two counts of burglary in the second degree in violation of Iowa Code sections 713.1 and 713.5(1) (1997). Defendant was also alleged to be an habitual offender in accordance with Iowa Code section 902.8. Prior to trial the State filed a substitute, supplemental information, which omitted any reference to defendant's criminal history or his status as an habitual offender. The first proceeding commenced in December of 1998 and, due to unusual and unforeseeable circumstances, ended in a mistrial.

Evidence adduced at the second trial indicates defendant and his accomplice, Robby Inghram, systematically engaged in a scheme to burglarize homes near rural Danville. Their chosen method of accomplishing this endeavor was to drive through sparsely populated areas in search of a home that appeared to be unoccupied during regular work hours. On the morning of March 16, 1997, the men happened

upon the residence of Joann Beckman. They parked, knocked to ascertain the premises were vacant, and broke in through a back door. They then proceeded to burglarize the home stealing several televisions, a VCR, one rifle, cased, and one shotgun, uncased.

Having completed the theft, the men decided to store the goods in Inghram's basement. Robby's sister, Natalie, was present at the time and witnessed defendant carrying a large gun. Having been discovered, Robby admitted he and Oetken had stolen the items and told Natalie not to "freak out." Shortly thereafter Inghram left for work.

At approximately 7:30 the next morning, Oetken and Inghram set out once again. On this occasion they victimized the home of Gerald Morrison. Employing the same methods used the previous day, the two men parked their car, knocked on the back door, broke in, and stole a TV, a VCR, a stereo, two telephones, and one cased, Winchester, 12–gauge shotgun. As before, Robby's sister, Natalie, witnessed the pair hide their plunder in the Inghram basement.

That same morning Oetken and Inghram visited the home of Patricia McConnell, a neighbor of Gerald Morrison. Again, they parked their car and knocked on a back door. On this occasion, however, a resident responded to the summons. The men made an ill attempt to explain their presence and exited in haste.

Soon thereafter, the pair feared the authorities were closing in. In an effort to conceal their deeds, Oetken and Inghram disposed of the stolen property by throwing the items in the Mississippi River. The men's paranoia was apparently justified, as the police had in fact suspected them of the crimes. Authorities subsequently searched the area where defendant disposed of the property and recovered, among other things, the shotgun stolen from Gerald Morrison. Inghram confessed when faced with this and other seemingly overwhelming evidence.

Oetken pled not guilty and was convicted on all counts. Defendant was then sentenced to a term of imprisonment not to exceed fifteen years. On appeal he now contends the following: (1) there was insufficient evidence to prove he possessed a dangerous weapon in the manner required to elevate his crime to second-degree burglary; (2) the jury was not instructed as to the elements of the offense; and (3) the trial court erred in enhancing his sentence as an habitual offender.

Defendant notes error may not have been preserved with respect to his first two claims. We agree. Oetken therefore requests we address those issues in terms of ineffective assistance of counsel. To that end defendant also contends counsel was inadequate in that he did not conduct a thorough investigation prior to trial, file a motion to sever the offenses, object to hearsay, or demand voir dire, opening statements, and closing arguments be reported for the record.

II. Scope of Review

Claims of ineffective assistance of counsel are derived from the Sixth Amendment to the United States Constitution, and are afforded a de novo review. *State v. Pace,* 602 N.W.2d 764, 768 (Iowa 1999). Such claims are generally preserved for postconviction proceedings unless, as here, a satisfactory record exists upon which to base a conclusion. *Id.*

To sustain his petition, defendant must prove, by a preponderance of the evidence, that trial counsel failed in an essential duty and prejudice resulted therefrom. *State v. Atwood,* 602 N.W.2d 775, 784 (Iowa 1999). There is a strong presumption that counsel's performance meets professional standards. *Wemark v. State,* 602 N.W.2d 810, 814 (Iowa 1999). To rebut this presumption defendant must present an affirmative factual basis establishing inadequate representation. *Id.* Improvident trial strategy or miscalculated

tactics do not necessarily constitute ineffective assistance of counsel. *Id.*

██ Moreover, the resultant prejudice must give rise to a reasonable probability the outcome of the proceeding would have been different had counsel not erred. *Pace,* 602 N.W.2d at 774. We need not consider whether counsel did in fact abrogate a duty if no prejudice is evident. *Id.*

## III. Analysis

### A. Sufficiency of the Evidence

██ Defendant's primary contention on appeal is that the State did not have sufficient evidence to prove he possessed a dangerous weapon for the purpose of promoting the commission of the crime. To that end, Oetken argues the incidental acquisition of a weapon during the perpetration of a burglary, in and of itself, cannot serve to elevate the offense.

Defendant's position is not supported by precedent. In *State v. Franklin,* 368 N.W.2d 716 (Iowa 1985), defendant, Franklin, and several accomplices, entered the home of Catherine and Douglas Darby. Douglas was severely beaten after which the men ransacked the premises in hopes of finding drugs, weapons and money. None of the men were armed when they initially entered the apartment, but during the search a machete was discovered, which Franklin subsequently used to threaten the Darbys. Franklin claimed that because he did not enter the household armed, his conviction for first-degree burglary could not stand. We disagreed, holding matters that occur after entry, such as physical injury, or *possession of a weapon at any point while participating in the burglary,* are of moment in elevating the crime. *Franklin,* 368 N.W.2d at 720.

In *State v. Olsen,* 482 N.W.2d 452 (Iowa App.1992), defendant, Olsen, burglarized a home, found a gun, loaded it, fired a shot through the wall of the house, and fled the scene. While making his escape, Olsen was chased by the police. In an effort to dispose of incriminating evidence he jettisoned the gun through the window of the car. Olsen was later convicted of burglary in the first degree. Even though the weapon was not used to further the commission of the crime, the court of appeals followed our language in *Franklin* holding defendant's possession of a weapon at any time permitted elevation of the offense.

Oetken endeavors to distinguish *Franklin* and *Olsen,* observing the defendants therein actually used and or brandished weapons, whereas the firearms he allegedly stole constituted nothing more than loot from a burglary. Here, defendant notes two of the three firearms were removed from the homes in cases, the guns were neither used nor brandished in any manner, and any crime he may have committed is analogous to the burglary of an armament factory where a thief runs away with a sack of rifles. Oetken argues the legislature never intended the mere theft of a weapon, be it from a department store or a private gun collection, to be sufficient to elevate an offense for possession under the burglary statute. Such a policy, he avers, would lead to absurd results.

Iowa Code sections 713.1 and 713.5 provide:

Any person, having the intent to commit a felony, assault or theft therein, who, having no right, license or privilege to do so, enters an occupied structure, such occupied structure not being open to the public, or who remains therein after it is closed to the public or after the person's right, license or privilege to be there has expired, or any person having such intent who breaks an occupied structure, commits burglary.

. . . .

A person commits burglary in the second degree in either of the following circumstances:

1. While perpetrating a burglary in or upon an occupied structure in which no persons are present, the person has possession of an explosive or incendiary

device or material, or a dangerous weapon, or a bodily injury results to any person.

The language of the statute is relatively straightforward, it simply requires an offender have "possession" of a dangerous weapon. Possession can be actual, constructive, joint, or sole. *State v. Maghee*, 573 N.W.2d 1, 10 (Iowa 1997).

A person who has direct physical control of something on or around [his][her] person is in actual possession of it.

A person who is not in actual possession of something and has the authority or right to maintain control of it either alone or together with someone else, is in constructive possession of it.

If one person alone has possession of something, possession is sole.

If two or more persons share possession, possession is joint.

*Id.*

The circumstances of this case indicate Oetken and Inghram burglarized two homes. During the commission of these crimes the men found three guns, inspected them, and absconded with the firearms in their possession. Natalie Inghram witnessed Oetken carrying guns into the basement of her home, and Robby Inghram later confessed, implicating his confederate. There was sufficient evidence for the jury to adduce Oetken had possession of a weapon at some point during the commission of the crimes. We need not consider whether defendant had actual or constructive possession of the weapons because the word itself is subject to more than one meaning and can be used interchangeably to describe either. *State v. Eickelberg*, 574 N.W.2d 1, 3 (Iowa 1997).

Nor does the statute require a weapon be used or brandished. In *Eickelberg*, we noted the distinction between possession and use of a firearm for purposes of a penalty enhancement provision. *Id.* at 5. Therein, defendants were in the process of establishing a drug production operation in the basement of their home when the police happened upon the scene. A search later revealed five marijuana plants, assorted drug paraphernalia, and an unloaded shotgun, in a case, on a rack, in the same room. Defendants were found guilty of manufacturing marijuana while in immediate possession or control of a firearm. On appeal, defendants argued the State was required to prove an affirmative act linking the weapon to the furtherance of the drug operation.

We did not find the assertion compelling. Instead, we contrasted a federal law, which stipulated a defendant must use or carry a firearm while committing a drug offense, with the Iowa statute that merely necessitated an accused possess or control a firearm to be guilty under the enhancement provision. *Id.* (comparing *Bailey v. United States*, 516 U.S. 137, 150, 116 S.Ct. 501, 509, 133 L.Ed.2d 472, 484 (1995)). We remarked that had our legislature wished to restrict the enhanced penalty to situations in which a weapon is actually used or carried, it could have done so. *Id.*

The scenario in *Eickelberg* is similar to the burglary statute at hand, wherein the legislature prohibited the mere possession of a dangerous weapon as opposed to its use. This likely indicates the policy underlying the statute is to prohibit felons from possessing, transporting, or transferring guns, rather than simply using them during the commission of a crime.

B. Jury Instructions

Defendant avers two assignments of error with regard to jury instructions. First, Oetken argues the trial court failed to instruct the jury as to the elements of theft, the crime underlying the burglary charge, and that this failure resulted in reversible error. Second, Oetken asserts the trial court should have defined the word "possession." In support of his first argument, defendant cites *State v.*

*Mesch,* 574 N.W.2d 10 (Iowa 1997), in which we held the State is

> required to specify the felony that the defendant intended to commit after the breaking and entering. To avoid confusion or speculation on the part of the jury, the district court must also instruct on the elements constituting the felony. Failure to do both is reversible error.

*Mesch,* 574 N.W.2d at 14 (citations omitted).

To commit burglary in Iowa, a person unlawfully entering a premises must have the intent to commit a felony, assault or theft therein. *See* Iowa Code § 713.3. In *Mesch,* the trial court refused to instruct the jury as to which crime or felony an accused charged with burglary intended to commit. We reversed the defendant's conviction on the grounds that, unless the State limits its prosecution and requested jury instructions to theft or assault, the State must specify which felony it believes a burglar intended to commit. *Mesch,* 574 N.W.2d at 14. We also directed the court to instruct the jury as to the elements constituting the felony. *Id.*

■ Generally, a court is required to instruct the jury as to the pertinent issues, the law, and the definition of the crime. *State v. Kellogg,* 542 N.W.2d 514, 516 (Iowa 1996); *Henderson v. Scurr,* 313 N.W.2d 522, 525 (Iowa 1981). Particular terms need not be defined, though, if readily understood by persons of ordinary intelligence. Only technical terms or legal terms of art must be explained. *Kellogg,* 542 N.W.2d at 516.

We need not decide, however, whether "theft" is a term readily understood by persons of ordinary intelligence or whether it is a legal term of art warranting a definitional instruction. Even assuming an instruction defining the crime of theft should have been given, we conclude the defendant suffered no prejudice from the absence of such an instruction here.

■ An intent to commit theft may be inferred from an actual breaking and entering of a building which contains things of value. *State v. Sangster,* 299 N.W.2d 661, 663 (Iowa 1980); *State v. Clay,* 213 N.W.2d 473, 480 (Iowa 1973). In the context of the burglary statute and the facts presented herein, the evidence overwhelmingly indicated Oetken intended to commit theft by breaking into private residences, and stealing firearms, televisions, and other personal property. Oetken was not prejudiced by the jury's understanding of the term "theft." Nor, for the reasons set forth in the previous division, was he prejudiced by the jury's application of the commonly accepted meaning of "possession." It is therefore unnecessary for us to consider whether his attorney abrogated a duty by failing to request further instruction in these regards.

## C. Propriety of the Enhanced Sentence

■ Following his conviction, Oetken was sentenced as an habitual offender. Defendant now contends the district court was without authority to so rule. Oetken bases this assertion on the fact that the State filed a substituted and supplemental trial information within which no reference was made to defendant's purported status as an habitual offender. Defendant maintains the substituted trial information replaced the one previously filed, thereby relieving the court of jurisdiction to consider the matter.

■ A challenge to subject matter jurisdiction may be made at any time. *State v. Mandicino,* 509 N.W.2d 481, 482 (Iowa 1993). Generally, this rule is extended to instances like this one where a court has jurisdiction, but is more appropriately alleged to lack the authority to hear a particular case. *Id.* Our review of this issue is for correction of errors at law. *State v. Clark,* 608 N.W.2d 5, 7 (Iowa 2000); *Holding v. Franklin County Zoning Bd.,* 565 N.W.2d 318, 320 (Iowa 1997).

Iowa Rule of Criminal Procedure 6(5) provides:

If the offense charged is one for which the defendant, if convicted, will be subject by reason of the Code, to an increased penalty because of prior convictions, the allegation of such convictions, if any, shall be contained in the indictment. A supplemental indictment shall be prepared for the purpose of trial of the facts of the current offense only, and shall satisfy all pertinent requirements, except that it shall make no mention, directly or indirectly, of the allegation of the prior convictions, and shall be the only indictment read or otherwise presented to the jury prior to conviction of the current offense. The effect of this subdivision shall be to alter the procedure for trying, in one criminal proceeding, the offenses appropriate to its provisions, and not to alter in any manner the basic elements of an offense as provided by law.

 Rule 6(5) is applicable with respect to prior convictions used as a basis for enhancement penalties. *State v. Cook*, 565 N.W.2d 611, 614 (Iowa 1997). The purpose of the rule is to ensure an accused a fair trial on the primary charge by requiring the prosecution to file a supplemental information in which prejudicial references to a defendant's criminal history are deleted. *Id.* at 613.

Here, the State filed a substituted and supplemental information in order to comply with rule 6(5). At no point did the State expressly or impliedly indicate an intent to drop the habitual offender charges. Nor was this a ploy to mislead or deceive the defendant. This procedure has been utilized by Iowa courts for the last thirty-five years, and was designed to put Oetken on notice. *See State v. Robinson*, 165 N.W.2d 802, 803–04 (Iowa 1969).

Defendant cannot now claim he was unaware of the impending habitual offender adjudication. To do so would be disingenuous. The record indicates Oetken was privy to conversations in which the court addressed issues concerning defendant's status during trial. It also reveals Oetken stipulated to the propriety of two prior burglary convictions, and specifically relieved the State of its duty to prove him an habitual offender. *See* Iowa R.Crim. P. 18(9).

 Oetken, however, contends the district court erred in accepting this stipulation without first determining whether he understood the consequences of admitting his criminal past. Oetken cites *State v. Brady*, 442 N.W.2d 57 (Iowa 1989), wherein defendant, Brady, was convicted of burglary and adjudicated an habitual offender. On appeal, Brady claimed his avowal of prior felonies under the habitual offender statute was tantamount to a guilty plea, and that the trial court was thus required to advise him in accordance with Iowa Rule of Criminal Procedure 8(2)(b) before accepting a voluntary concession. *Brady*, 442 N.W.2d at 57.

Although Brady's claim did not survive on its merits, we did acknowledge "a defendant's admission of prior felony convictions which provide the predicate for sentencing as an habitual offender is so closely analogous to a guilty plea that it is appropriate to refer to our rules governing pleas, specifically, rule 8(2)(b)...." *Id.* at 58.

Rule 8(2)(b) provides in relevant part:

*Pleas of guilty.* The court may refuse to accept a plea of guilty, and shall not accept a plea of guilty without first determining that the plea is made voluntarily and intelligently and has a factual basis. Before accepting a plea of guilty, the court must address the defendant personally in open court and inform the defendant of, and determine that the defendant understands the following:

(1) The nature of the charge to which the plea is offered.

(2) The mandatory minimum punishment, if any, and the maximum possible punishment provided by the statute defining the offense to which the plea is offered.

There is nothing in the record to indicate Oetken failed to understand the nature of an habitual offender decree, or the significance of his admission. Oetken agreed to stipulate as to his habitual offender status during both trials. He also took the stand in his own defense and professed to having twice been convicted of felonies involving dishonesty. At Oetken's allocution the possible implications with regard to the sentencing of an habitual offender were discussed at length. Defendant was then afforded an opportunity to speak on his own behalf. In hopes of inducing leniency, Oetken again admitted his criminal past, expressed his regrets, and conveyed his desire for a promising and productive future with his family. Even though defendant was fully cognizant of his rights, including those delineated under rule 18(9), no effort was made to deny his criminal record, or to object to the propriety of sentence enhancement. *See* Iowa R.Crim. P. 18(9).

The trial court discharged its duty to inform the defendant as to the ramifications of an habitual offender adjudication. Under the circumstances, there is little else the court could have done to more clearly explicate the matter. Accordingly, we find no error was committed.

### D. Trial Counsel Was Ineffective for Not Filing a Motion to Sever

Oetken contends he received ineffective assistance of counsel because his attorney did not move to sever counts I and II of the trial information. Specifically, defendant maintains the burglaries were not part of a common scheme or plan and, in accordance with Iowa Rule of Criminal Procedure 6(1), should have been tried separately.

Rule 6(1) provides:

Two or more public offenses which arose from the same transaction or occurrence or from two or more transactions or occurrences constituting parts of a common scheme or plan may be alleged and prosecuted as separate counts in a single complaint, information or indictment, unless, for good cause shown, the trial court in its discretion determines otherwise.

Iowa R.Crim. P. 6(1).

A common scheme or plan requires more than the commission of two similar transgressions by a single person. *State v. Wright,* 191 N.W.2d 638, 641 (Iowa 1971). The offenses must have a common link. *Id.* In short, they must be the products of a single or continuing motive. *State v. Robinson,* 506 N.W.2d 769, 772 (Iowa 1993) (interpreting *State v. Lam,* 391 N.W.2d 245, 249–50 (Iowa 1986)). In making this determination we have found it helpful to consider factors such as intent, modus operandi, and the temporal and geographic proximity of the crimes. *See Lam,* 391 N.W.2d at 249–50.

Oetken asserts the crimes with which he was charged were perpetrated on different days and by different means, and should not, therefore, have been deemed products of a single or continuing motive. Defendant's position is not supported by Iowa case law. In *Lam,* for example, we held that two burglaries committed on the same day, in the same general location, using the same means of entry and transportation, were parts of a common scheme or plan to burglarize apartments during normal working hours. *Id.* at 250. We readily inferred both offenses were products of a single and continuing motive for obtaining small portable objects from apartments for money. *Id.*

We have held similarly in other cases. *See State v. Thornton,* 506 N.W.2d 777, 779 (Iowa 1993) (no severance required when crimes took place on two consecutive days); *State v. Houston,* 439 N.W.2d 173, 178 (Iowa 1989) (no severance required where offenses of burglary and possession of burglar's tools were products of a single, continuing motive in a series of planned thefts); *State v. Delaney,* 526 N.W.2d 170, 174–75 (Iowa App.1994) (no severance required where money from eight loan trans-

actions over an eleven-month period was obtained by similar methods accompanied by a continuing self-indulgent motive).

Oetken committed two burglaries, on two consecutive days, using similar methods of operation—*i.e.*, he traveled through the rural countryside in search of homes that were unoccupied during traditional work hours, he knocked to ascertain the abodes were indeed vacant, broke and entered the premises through the rear doors, and proceeded to steal small portable objects such as TVs, VCRs, and guns. This constitutes sufficient evidence of a common scheme or plan with a single continuing motive.

■ Notwithstanding, defendant avers there was insufficient evidence to convict him of either crime. He asserts the jury ascertained his guilt on the basis of the evidence as a whole, rather than compartmentalizing the facts with respect to each charge. Oetken maintains he would have been insulated from this prejudice had the offenses been tried separately.

■ Generally, we must balance any unfair prejudice that could result from a joint trial against the State's interest in judicial economy. *State v. Trudo*, 253 N.W.2d 101, 104 (Iowa 1977); *Delaney*, 526 N.W.2d at 175. Here, evidence was adduced manifesting defendant's guilt on both counts. Robby Inghram confessed to having committed the crimes with Oetken. Natalie Inghram attested to having seen Oetken carry guns and other stolen goods into her basement subsequent to each burglary. She further swore the two men admitted the items had been obtained illicitly and cautioned her to be calm. Jason Blunk testified he accompanied Oetken when defendant fenced two of the stolen TVs. Oetken had also apparently warned Inghram to discard the shoes he wore during commission of the offenses. Although Inghram neglected to do so, and as a result was later tied to both crime scenes, Corey Coleman revealed he had in fact been asked to dispose of Oetken's shoes. In addition, rebuttal testimony was elicited to impugn defendant's testimony and his alibi for the mornings in question.

The jury was presented with evidence which it could reason sufficiently linked defendant to both crimes. It was also admonished to consider Oetken's guilt or innocence on each count separately. Defendant cannot point to a specific error on the part of the jury, nor has he proven prejudice by a preponderance of the evidence.

### E. Inadequacy of the Record

■ Defendant claims trial counsel was ineffective because he did not request opening statements, closing arguments, or voir dire be reported for the record. Oetken does not, however, assert any specific error occurred during the course of those proceedings, or that he was prejudiced as a result of his trial counsel's representation. Nor does he cite authority that requires an attorney solicit the memorialization of those events. Oetken simply alleges the omission resulted in the production of an inadequate record from which an appellate defender might elicit error.

In *State v. Newman*, 326 N.W.2d 796 (Iowa 1982), we expressed an inclination to give a defendant the benefit of the doubt on the question of prejudice when a specific allegation of impropriety is leveled in a trial in which the court refuses to have arguments reported. *Newman*, 326 N.W.2d at 800. Such is not the case here. The district court did not prohibit the transcription of arguments. Nor does Oetken maintain anything untoward occurred during any stage of these proceedings. Defendant's claim is without merit.

### IV. Conclusion

We have duly considered Oetken's other assertions of error and have found them wholly without merit. Throughout, defendant has either neglected to aver a specific prejudice, or has consistently failed to

meet his burden of proof. The judgment of the trial court is affirmed.

**AFFIRMED.**

All justices concur except CARTER and LAVORATO, JJ., who take no part.