**STATE of Iowa, Appellee,**

v.

**Gary Lynn BOWERS, Appellant.**

No. 02–0020.

Supreme Court of Iowa.

May 7, 2003.

Linda Del Gallo, State Appellate Defender, and Stephan J. Japuntich, Assistant State Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Kevin Cmelik, Assistant Attorney General, and Lee W. Beine, County Attorney, for appellee.

CARTER, Justice.

Defendant, Gary L. Bowers, appeals from convictions on four counts of second-degree sexual abuse in violation of Iowa Code sections 709.1 and 709.3 (2001). He urges that the judgments of conviction should be overturned based on the ineffectiveness of his trial counsel in the following particulars: (1) filing an untimely motion to suppress his confession, (2) failing to urge that his confession was the fruit of an illegal search, (3) failing to request a jury instruction on the voluntariness of his confession, (4) failing to request a jury instruction on the State's alleged failure to preserve evidence, (5) failing to challenge alleged prosecutorial misconduct during final argument, and (6) failing to make an adequate record to challenge the district court's rejection of a proposed plea agreement. After considering each of these

contentions, we affirm the judgment of the district court.

Defendant, Gary Bowers, is the stepfather of Zebidiah Holevoet, born on July 22, 1986. Zebidiah lived with his father until he was nine years of age, at which time he moved in with his mother, Tina Bowers, and defendant. The family moved into a new home at 238 South Second Street in West Branch, Iowa, when Zebidiah was ten years of age.

When he was fourteen, Zebidiah returned to the residence of his father, Cory Holevoet. At this time, he told his father about sexual activity he had participated in with his mother and defendant. Mr. Holevoet contacted the Illinois Department of Human Services about Zebidiah's allegations, and a criminal investigation ensued.

Special agent Richard Rahn of the Iowa Department of Criminal Investigation (DCI) was assigned to the case. Agent Rahn interviewed Zebidiah on May 25, 2001, and tape recorded the interview. In that interview, Zebidiah told agent Rahn the following.

Approximately two months after moving into the West Branch home, Zebidiah alleged that he and his mother were drinking wine coolers and began discussing sex. He claimed that at his mother's urging he performed oral sex on her, she performed oral sex on him, and they engaged in sexual intercourse. About three days later, Zebidiah alleged that he performed oral sex on defendant, defendant performed oral sex on him, and he again engaged in sexual intercourse with his mother. Zebidiah testified that this type of sexual activity continued one to three times per week for approximately one year.

In addition to revealing the sexual activity with his mother and defendant, Zebidiah informed agent Rahn that defendant had videotaped a seventeen-year-old girl taking a shower and toweling off thereafter. Based on that information, agent Rahn secured a warrant to search the Bowers' home for that videotape or any other pornographic material involving minors. The Bowers were then living in Lone Tree. The search of the Bowers' home pursuant to the warrant began with neither defendant nor his wife at home. Approximately thirty minutes into the search, Tina Bowers returned home. Agent Rahn read the search warrant to Tina and asked her to accompany him to the Riverside Fire Department for an interview. Agent Rahn drove Tina in his unmarked squad car, and DCI agent Matt George accompanied them.

Defendant arrived home after Tina had left with the agents. He was advised that the officers were at his residence executing a search warrant for pornographic videos. He was also requested to accompany two officers to the Riverside Fire Department for questioning. When he arrived at the fire department, he spoke briefly with Tina before he was interviewed. Agent Rahn interviewed defendant alone, while agent George sat in an adjoining area out of defendant's view but trying to listen. The interview was not recorded. Agent Rahn initiated the interview by reading defendant his *Miranda* rights and getting a family history.

About halfway through the interview, defendant was advised he was being investigated for sexual abuse. Defendant admitted Zebidiah had performed oral sex on him on at least two occasions and that he performed oral sex on Zebidiah on one occasion. Defendant also admitted there were separate acts of fondling. Defendant estimated that the sexual activity occurred approximately once per week, over a two- to six-month period. The entire interview took approximately one hour.

After the criminal charges that are the subject of this appeal were filed against him, defendant filed a motion to suppress the use of his confession as evidence on the basis that it was involuntary. Although this motion was untimely, the district court held a hearing and ruled on the merits of the motion. The motion was denied. At the ensuing trial, agent Rahn testified to the substance of defendant's oral confession. Zebidiah testified and confirmed the allegations he had made to authorities. The jury convicted defendant on all four counts of the trial information. Other factors that are relevant to the issues on appeal will be discussed in connection with our consideration of the legal issues presented.

## I. *Standard of Review.*

Claims of ineffective assistance of counsel are reviewed de novo, as they implicate a violation of constitutional rights. *State v. Oetken,* 613 N.W.2d 679, 683 (Iowa 2000). Such claims are generally preserved for postconviction-relief proceedings. *Id.* However, when a satisfactory record exists upon which to base a conclusion, the court resolves the issues on appeal. *Id.* The test is whether under the entire record and totality of the circumstances, counsel's performance was within the normal range of competence. *State v. Artzer,* 609 N.W.2d 526, 531 (Iowa 2000).

To sustain a claim for ineffective assistance of counsel, the defendant must prove by a preponderance of the evidence that trial counsel failed in an essential duty and that prejudice resulted from such failure. *Oetken,* 613 N.W.2d at 683. There is a strong presumption that counsel's performance meets professional standards. *Id.* Improvident trial strategy or miscalculated tactics do not necessarily constitute ineffective assistance of counsel. *Id.* at 683–84. Additionally, in order to show

prejudice, the defendant must prove by a reasonable probability that the outcome of the proceeding would have been different had counsel not erred. *Id.* at 684.

## II. *Issues Involving the Motion to Suppress Evidence.*

Defendant makes two claims of ineffective assistance of counsel as a result of the motion to suppress evidence filed on his behalf. First, he urges that the motion was not filed within forty days after arraignment as required by Iowa Rule of Criminal Procedure 2.11(4). The district court heard the motion and ruled on the merits thereof notwithstanding the late filing. Because we elect to review the district court's ruling on the merits, there is no basis for positing an ineffective-assistance-of-counsel claim on the tardy filing of the motion.

In reviewing the district court's ruling on the merits, we uphold the order denying the motion to suppress. Defendant claims that he was in custody immediately prior to and at the time of his interrogation. To the extent that this circumstance required that a *Miranda* admonition be given, defendant concedes that this was done. He does not suggest any failure on his part to understand the significance of the *Miranda* admonition nor do the circumstances surrounding his interrogation give us any pause in upholding the district court's finding that he freely waived his right to remain silent or to consult with counsel.

Defendant urges that, notwithstanding the *Miranda* admonition, his response to the DCI agents' questioning was involuntary. This contention is based on three factors: (1) that the DCI agents led him to believe that the interrogation would only relate to a pornographic video and did not advise him that he was under suspicion for sexual abuse, (2) that the atmosphere

in which the interrogation was conducted was coercive, and (3) the agents unduly restrained his opportunity to consult with his wife prior to questioning in violation of Iowa Code section 804.20.

The State bears the burden of proving by a preponderance of evidence that an accused's confession is voluntary. *State v. Countryman,* 572 N.W.2d 553, 559 (Iowa 1997). The ultimate test in making this determination is whether, under the totality of the circumstances, the statements were the product of an essentially free and unconstrained choice, made by the subject at a time when that person's will was not overborne or the capacity for self-determination critically impaired. *State v. Snethen,* 245 N.W.2d 308, 315 (Iowa 1976); *State v. Cullison,* 227 N.W.2d 121, 127 (Iowa 1975). With regard to defendant's claim of deception in the interrogation, we have recognized that artifice or deception is merely one factor to be considered in judging whether a confession is voluntary based on the totality of the circumstances. *See State v. Reid,* 394 N.W.2d 399, 404 (Iowa 1986) (deception as to what forensic evidence revealed); *State v. Oliver,* 341 N.W.2d 25, 28 (Iowa 1983) (deception as to result of polygraph examination).

With regard to defendant's contention that the circumstances surrounding the in-terrogation were coercive, we agree with the district court's conclusion that no objective evidence of coercion has been presented apart from the coercive aura that inheres in any custodial interrogation by a law officer.

Defendant urges that the DCI agents unduly limited his right to consult with his wife at the fire station and thus denied him a right provided by Iowa Code section 804.20. He argues that denial of the right to "consult" with a family member as provided in that statute requires suppression of the statements made by him to the DCI agents.[1] In *State v. Tornquist,* 254 Iowa 1135, 1150, 120 N.W.2d 483, 492 (1963), we concluded that a failure to allow consultation with a family member as mandated by section 804.20 was not a basis for the exclusion of a subsequent confession, but only one factor to be considered in determining whether the confession was voluntary.

We have never declared that a violation of section 804.20, which is not also a violation of *Miranda,* will in all instances require suppression of a resulting confession. The evidence that we held should be suppressed in *State v. Vietor,* 261 N.W.2d 828, 832 (Iowa 1978), was not a confession, but rather testimony that a person accused of OWI had declined to take a chemical test.[2]

1. That statute provides:

Any peace officer or other person having custody of any person arrested or restrained of the person's liberty for any reason whatever, shall permit that person, without unnecessary delay after arrival at the place of detention, to call, consult, and see a member of the person's family or an attorney of the person's choice, or both. Such person shall be permitted to make a reasonable number of telephone calls as may be required to secure an attorney. If a call is made, it shall be made in the presence of the person having custody of the one arrested or restrained. If such person is intoxicated, or a person under eighteen years of age, the call may be made by the person having custody. An attorney shall be permitted to see and consult confidentially with such person alone and in private at the jail or other place of custody without unreasonable delay. A violation of this section shall constitute a simple misdemeanor.

Iowa Code § 804.20 (2001).

2. In a recent decision, we held that evidence obtained from foreign nationals in violation of their rights under the Vienna Convention on Consular Relations does not give rise to an exclusionary remedy. *State v. Buenaventura,* 660 N.W.2d 38, 45–46 (Iowa 2003).

We need not decide the extent to which a violation of section 804.20 with respect to a family member will justify suppression of the fruits of an interrogation because we conclude that, given the circumstances of the present case, section 804.20 was not violated.

Defendant's motion to suppress must be decided in the context of the situation defendant claimed that he and his wife were in at this time. It was his contention (and also hers) that they both were in custody at the time that their right to consult under section 804.20 was allegedly denied. We believe that the right of a person in custody to consult with a family member is considerably diluted when the family member is also in custody for criminal conduct carried on jointly with the interrogated subject. Under the circumstances that existed, we are satisfied that the brief exchange of words that was permitted was sufficient to satisfy the requirements of section 804.20. We uphold the district court's ruling denying the motion to suppress. Consideration of that issue on the merits obviates any potential ineffective-assistance-of-counsel claim based on the late filing of the motion.

### III. *Whether Defendant's Confession Was the Fruit of an Illegal Search.*

■ Defendant contends that his confession was the fruit of an illegal search and that his counsel was ineffective in failing to seek its suppression on Fourth Amendment grounds. We reject this claim for two reasons.

■ First, the search that the officers conducted of defendant's residence was pursuant to a valid warrant. In determining whether probable cause has been established for the issuance of a search warrant, the test is whether a person of reasonable prudence would believe a crime was being committed on the premises to be searched or evidence of a crime could be located there. *State v. Seager,* 341 N.W.2d 420, 427 (Iowa 1983); *State v. Post,* 286 N.W.2d 195, 199 (Iowa 1979). The warrant was issued on an affidavit stating probable cause to believe that a pornographic video of a minor had been prepared on the premises and was possibly still available for seizure. The circumstances disclosed by the affidavit were sufficient to justify the issuance of the warrant.

In addition, because the interrogation of defendant in no way related to any knowledge that the DCI agents obtained from the search of his residence, the fruit of the interrogation was in no way a fruit of the search. Defendant's trial counsel was not ineffective in failing to seek suppression of defendant's confession on Fourth Amendment grounds.

### IV. *Failure to Request a Jury Instruction on Voluntariness of Defendant's Confession.*

■ Defendant urges that his trial counsel was ineffective in failing to request a jury instruction with respect to the voluntariness of his confession. He urges that *State v. Cameron,* 254 Iowa 505, 511, 117 N.W.2d 816, 819 (1962), determined that, if a subject of interrogation is denied an opportunity to consult with a family member, the accused is entitled to an instruction advising the jury that it may consider this fact in determining whether the confession was voluntary. We disagree.

In *State v. Holland,* 258 Iowa 206, 215, 138 N.W.2d 86, 91 (1965), we adopted the orthodox rule for determining the admissibility of the confession. The issue of whether or not a confession was voluntary is first and finally determined by the court after hearing outside the presence of the

jury. *Id.* If found to be admissible, the weight and credibility to be given to the confession is left to the jury. In making that determination, it is proper that the jury be instructed with respect to the weight to be accorded a confession. This is particularly desirable when, as in the present case, those issues have not been developed by cross-examination of the party giving the confession. But such an instruction should not allow the jury to revisit the issues of voluntariness that have already been settled by the court. It should touch on matters that go to weight and believability of the confession, such as the defendant's mental capacity, emotional state, and understanding of the matters included in the confession. *See* Iowa Crim. Jury Instruction 200.16. Defendant's argument is not based on the failure to give that type of an instruction. His argument proposes that the court should have instructed the jury that, as a result of defendant's inability to consult with his wife, his statements were the product of coercion and therefore unreliable. That type of instruction was neither supported in the evidence nor a proper allocation of the respective roles of court and jury in considering a confession. To the extent that any language contained in our *Cameron* opinion conflicts with this conclusion, those comments are disapproved.

### V. *Failure to Request a Jury Instruction on the State's Alleged Failure to Preserve Evidence.*

 Defendant urges that his trial counsel was ineffective in not requesting an instruction that the act of the DCI agents in destroying their raw field notes would allow the jury to conclude that the notes would have been unfavorable to the State's case. The only evidence bearing on this circumstance was testimony from the agents that Department of Criminal Investigation policy dictates that, once a typewritten report is made with respect to an investigation, the raw field notes be destroyed. It appears that this record destruction policy was neutral in that it pertained to all field notes and not merely notes of interviews with persons suspected of crimes. That circumstance, we believe, did not justify the giving of a spoliation instruction. *See State v. Langlet,* 283 N.W.2d 330, 333 (Iowa 1979).

Defendant also requested a spoliation instruction based on the failure to tape-record his interrogation. We have not been made aware of any requirement that law enforcement officers tape-record their interviews, and a failure to do so may in no way be equated with the destruction of evidence. Defendant's counsel was not ineffective for failing to request a spoliation instruction.

### VI. *Failure to Challenge Alleged Prosecutorial Misconduct During Final Argument.*

 Defendant asserts that his trial counsel was ineffective in failing to object to statements by the prosecutor in final argument that defendant and his wife were "undercharged" and "could have been charged with fifty counts." We dealt with an identical issue in the appeal of Tina Bowers' conviction, *State v. Bowers,* 656 N.W.2d 349, 355 (Iowa 2002). We noted that the evidence against both of the Bowers was inexact as to the number of and times of the sexual encounters that took place. The State, in proving its case against both defendants, offered all available evidence of sexual abuse during a specified period of time, which largely consisted of estimates of the number of occurrences per week for a certain number of months. The evidence presented through Zebidiah's testimony suggested that acts of sexual abuse occurred one to three times per week for approximately a year.

We concluded in Tina's appeal that this method of proof was permissible, and the comment on the multiple acts of sexual abuse revealed by the evidence was not improper. *Id.* We reach the same result here. We conclude that defendant's counsel was not ineffective for failing to challenge the prosecutor's final argument on the grounds defendant now suggests.

### VII. *Failing to Make an Adequate Record to Challenge District Court's Rejection of Proposed Plea Agreement.*

As a final matter, we consider defendant's contention that his counsel was ineffective in not making an adequate record to challenge the district court's rejection of a proposed plea agreement. As he concedes, the record is inadequate to decide this issue because neither the precise nature of the proposed plea agreement, if any, nor the district court's response to any such agreement is shown by record evidence. In order that defendant may have an opportunity to adequately develop this matter, we preserve this claim for a possible postconviction-relief application.

We have considered all issues presented and conclude that the judgment of the district court should be affirmed.

**AFFIRMED.**