# IN THE COURT OF APPEALS OF IOWA

No. 17-0117
Filed September 26, 2018

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**STEVEN ASBURY,**
        Defendant-Appellant.
_____

Appeal from the Iowa District Court for Polk County, Paul D. Scott, Judge.

Steven Asbury appeals from judgment and sentence entered upon his conviction for first-degree murder following a jury trial. **AFFIRMED.**

Mark C. Smith, State Appellate Defender, and Maria L. Ruhtenberg, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Kevin Cmelik and Kelli A. Huser (until withdrawal), Assistant Attorneys General, for appellee.

Heard by Danilson, C.J., and Mullins and McDonald, JJ.

**DANILSON, Chief Judge.**

Steven Asbury appeals from judgment and sentence entered upon his conviction for first-degree murder following a jury trial. On appeal, Asbury asserts there was insufficient evidence of the identity of who shot the victim. He also contends he received ineffective assistance of trial counsel due to his attorney's failure to object to two jury instructions. Because we find substantial evidence supports the jury verdict and Asbury was not prejudiced by counsel's failure to object to the instructions, we affirm.

**I. Background Facts and Proceedings**

On the morning of July 15, 2016, Tabitha Lee borrowed Steven Asbury's maroon Ford F-150 pickup truck to visit James Patton. Asbury and Patton both had past romantic relationships with Lee. Patton had been asked to leave the camper in which he had been living, and Lee was bringing the truck to assist him. Patton and Lee loaded his belongings into Asbury's truck. Later that evening, Lee saw text messages she received from Asbury. The text messages indicated Asbury was angry Lee was using his truck to assist Patton, and, in one message, Asbury asked Lee if she wanted him to shoot Patton.

After Lee read the text messages, Lee and Patton got into an argument at a fast-food restaurant, and a restaurant employee called the police. Patton took his bicycle out of Asbury's truck and rode away. Lee then drove the truck, still filled with Patton's belongings, to Asbury's residence. Asbury was angry Patton's belongings were in the truck, and he told Lee he would not return the items.

Five days later, on the morning of July 21, Lee was with Asbury in his truck, and they were arguing. The argument began after Patton contacted Lee about

getting his belongings back from Asbury. After the argument, Asbury's truck broke down, and Michelle Killen came to assist Lee and Asbury. Killen dropped Lee off at a fast-food restaurant and stayed with Asbury. Asbury planned to have his truck towed to Killen's auto shop.

At about 5:45 p.m. on July 21, Patton was at the Casey's convenience store on East 14th Street and Euclid Avenue in Des Moines, Iowa. Patton purchased beer, exited the store, and walked around the building. Patton walked toward a maroon Ford F-150 pickup truck in a laundromat parking lot and was shot multiple times—in the heart, lung, and twice in the groin area. The truck quickly left the area after the shooting. Police and rescue personnel were called to the scene, but Patton died from his injuries.

The State charged Asbury with first-degree murder in connection with Patton's death. Asbury pleaded not guilty, and the case was tried to a jury. During trial, it was undisputed that Patton was shot, that he died as a result, and that the shooter was in a maroon Ford F-150 pickup truck. Asbury maintained he was not the person who shot Patton.

Robert Norris, who was Asbury's friend, cooperated with the State to avoid being charged for Patton's murder. During the trial, Norris testified Asbury came to Norris's house on the afternoon of July 21 and asked Norris to drive him in Asbury's truck to the Casey's on East 14th Street and Euclid Avenue. Norris explained Asbury often asked Norris to drive him places in Asbury's truck. Norris drove Asbury to the Casey's, and Asbury told him to park the truck across the street facing the Casey's. After five to ten minutes, Asbury told Norris to pull the truck across the street to the Casey's. As Norris moved the truck, Asbury called

out to a man—who Norris later learned was Patton—to come over to the truck. Norris parked the truck in a laundromat parking lot behind the Casey's, and Patton walked up to the passenger side. Asbury grabbed a handgun from under the passenger seat, pointed it at Patton, asked if Patton thought "this was a game," and fired at least four shots. Norris then drove the truck away from the area and toward his house.

Norris parked the truck about a mile from his house, got out of the truck, took off his shirt and hid it in a bush. Norris told Asbury to take his shirt off, and they hid that shirt elsewhere. Norris's shirt was green, and Asbury's shirt was red. Asbury and Norris walked the rest of the way to Norris's house. After they arrived at Norris's house, they shaved their beards and changed clothes. Asbury departed the house but left his truck keys. Asbury's ex-girlfriend, Michelle Ehrsam, came later to retrieve the keys. Norris later led police to the locations of the discarded red and green shirts.

Ehrsam also testified at trial. She explained that on July 21 around 6:28 p.m., she and Killen picked Asbury up from Norris's house and drove to Killen's house. On the way to Killen's house, Asbury told Killen he needed to get rid of his truck. Later, Killen and Ehrsam returned to Norris's house to pick up the keys to Asbury's truck. Norris told them where to find the truck, and after finding the truck, Ehrsam drove it onto I-235 East and took the I-80 East exit. Killen followed in a blue van. Ehrsam pulled the truck to the side of the road near the Colfax exit as the truck began to overheat with steam or smoke coming from the engine. Ehrsam exited the truck and walked to Killen's van. Killen exited the van and walked to the truck. Ehrsam could not see what Killen was doing, but the truck caught fire while

Killen was near it. Killen and Ehrsam left the burning truck on the side of the road and returned to Killen's house. Neither woman called a fire department or 911.

Killen and Ehrsam arrived at Killen's house between 12:30 a.m. and 1:30 a.m. They then took Asbury to the bus station. Ehrsam bought a bus ticket under the name John Mills. She believed Mills was going with Asbury to Kansas. Mills never showed at the bus station, and Ehrsam gave Asbury the ticket she purchased in Mills's name. Ehrsam left the station and went home. Police later located and arrested Asbury in Kansas.

The State also presented evidence that law enforcement officers recovered bullet cartridge casings from the scene of the shooting and from the truck Ehrsam and Killen left burning on the side of the road. The Iowa Division of Criminal Investigation (DCI) determined the cartridges from the truck and the scene came from the same gun. DCI also determined the bullets recovered from Patton's body were the same kind of ammunition as the cartridges. Investigators were able to find surveillance videos from several buildings that captured the shooting and a maroon Ford F-150 pickup truck driving away from the scene. They also captured video stills of two men walking near where Norris testified he and Asbury left the truck.

During the trial, Asbury called no witnesses but challenged Norris's credibility and the strength of the State's evidence. The jury heard Norris entered into an agreement with the State to avoid prosecution for murder. The jury was informed of Norris's extensive criminal history, including his failure to register as a

sex offender.[1] Asbury's DNA was not found on the red shirt Norris said Asbury had worn. There was testimony and video evidence that Asbury was wearing a white shirt on the morning of July 21. In closing arguments, Asbury suggested it was Norris who shot Patton and argued the lack of physical evidence and the lack of credible witnesses left reasonable doubt as to the identity of the person who shot and killed Patton.

The jury found Asbury guilty of first-degree murder. The court sentenced him to life in prison without the possibility of parole. Asbury appeals.

## II. Scope and Standard of Review

"We review challenges to the sufficiency of evidence for correction of errors at law." *State v. Tipton*, 897 N.W.2d 653, 692 (Iowa 2017). A verdict of guilty will be upheld if supported by substantial evidence. *Id.* Substantial evidence exists "when a rational trier of fact would be convinced the defendant is guilty beyond a reasonable doubt." *Id.* To determine whether a finding of guilt is supported, all relevant evidence is viewed in the light most favorable to the State. *Id.*

"We review claims of ineffective assistance of counsel de novo because the claims implicate the defendant's Sixth Amendment right to counsel." *State v. Perkins*, 875 N.W.2d 190, 192 (Iowa Ct. App. 2015). Generally, we do not resolve claims of ineffective assistance of counsel on direct appeal. *Id.* If we determine the claim cannot be addressed on appeal, we must preserve it for possible

---

[1] In admitting evidence of Norris's failure to register, the trial court concluded failure to register as a sex offender was a "crime of veracity" and did not engage in an Iowa Rule of Criminal Procedure 5.609(b) balancing test. Given the verdict, the jury apparently believed Norris's testimony notwithstanding his criminal history and his bargain with the State.

postconviction-relief proceedings. *See State v. Johnson*, 784 N.W.2d 192, 198 (Iowa 2010).

We review challenges to jury instructions for correction of errors at law. *State v. Ambrose*, 861 N.W.2d 550, 554 (Iowa 2015). "Our review is to determine whether the challenged instruction accurately states the law and is supported by substantial evidence." *State v. Hanes*, 790 N.W.2d 545, 548 (Iowa 2010). Jury instructions are considered in their entirety. *See Deboom v. Raining Rose, Inc.*, 772 N.W.2d 1, 5 (Iowa 2009). "Error in jury instructions is reversible only if the error is prejudicial" and instructional errors are presumed prejudicial unless the record affirmatively establishes there was no prejudice. *Ambrose*, 861 N.W.2d at 554 (citation omitted). If the jury has not been misled when the instructions are considered as a whole, there is no reversible error. *Hanes*, 790 N.W.2d at 551 ("Our analysis of prejudice is also influenced by an evaluation of whether a jury instruction could reasonably have misled or misdirected the jury.").

**III. Discussion**

**A. Sufficiency of the Evidence**

Asbury contends there was insufficient evidence showing he was the person who shot Patton. Asbury's argument on appeal is essentially the same argument he made during trial: there is insufficient evidence he shot Patton because (1) the only person who identified Asbury as the shooter was Norris; (2) Norris isn't credible; (3) Norris possessed most of the physical evidence; (4) Asbury was wearing a white shirt, not a red one, the morning of July 21; and (5) his DNA was not found on the red shirt.

The State counters there was ample evidence in addition to Norris's testimony. We agree. Asbury had motive to shoot Patton as reflected in his text messages to Lee. The jury was shown photos from social media to connect the red shirt to Asbury. The truck at the crime scene matched Asbury's truck. A bullet cartridge casing was found in Asbury's truck matching a casing found at the crime scene. Both casings were consistent with the bullets recovered from Patton's body. After the shooting occurred, Asbury told Ehrsam he needed to get rid of his truck. The truck was left burning on the side of a road. In the early morning hours the day after the shooting, Asbury boarded a bus using someone else's name and left the state.

Generally, direct eyewitness testimony establishing the elements of the crime are sufficient to generate a jury question. *See State v. Kutcher*, No. 14–0602, 2015 WL 4935583, at *2 (Iowa Ct. App. Aug. 19, 2015) (holding officer's testimony that he saw defendant commit crime is sufficient to uphold verdict). Even in light of credibility challenges to a testifying witness, "[t]he jury is free to believe or disbelieve any testimony as it chooses." *State v. Thornton*, 498 N.W.2d 670, 673 (Iowa 1993).

In spite of Asbury's attempts to impeach Norris's credibility, it is apparent the jury believed Norris's testimony. The other evidence in the case—including Asbury's texts to Lee, the bullet casing in the truck, and Asbury's behavior after the shooting—corroborates Norris's testimony. Asbury's theory at trial—that Norris shot a man he did not know for some unknown reason—was clearly rejected by the jury. The physical and circumstantial evidence coupled with Norris's testimony are more than sufficient evidence to convince the jury beyond a reasonable doubt

it was Asbury who shot Patton. The jury's guilty verdict is supported by substantial evidence.

### B. Ineffective Assistance of Counsel

Asbury also contends he received ineffective assistance of trial counsel because his attorney failed to object to two jury instructions. Although the ineffectiveness issue is raised on direct appeal, we find the record sufficient to address it.

The court instructed the jury on the elements of first-degree murder in relevant part in Instruction 17:

> The State must prove all of the following elements of Murder in the first degree:
>     (1)  On or about July 21, 2016, the defendant shot James Patton.
>     (2)  James Patton died as a result of being shot.
>     (3)  The defendant acted with malice aforethought.
>     (4) The defendant acted willfully, deliberately, premeditatedly and with specific intent to kill James Patton.

Asbury challenges two subsequent instructions. The first challenged instruction stated, "Concerning element number two of Instruction 17, the shooting by the defendant resulted in the death of James Patton if it caused or directly contributed to James Patton's death."[2] The second challenged instruction stated, "Malice aforethought maybe [sic] inferred from the defendant's use of a dangerous weapon."[3]

Asbury does not argue the instructions were a misstatement of the law. Rather, he argues these two instructions improperly told the jury it was, in fact, the

---

[2] This instruction follows the format of Iowa Criminal Jury instruction 700.11, published by the Iowa State Bar Association.
[3] Apart from the typographical error, this instruction is identical to Iowa Criminal Jury Instruction 700.10.

defendant who shot the victim. The State counters that when all the instructions are read together, the two challenged instructions simply helped define elements of the crime that only come into play if the jury had already determined Asbury shot Patton. The State also contends there is no reasonable probability the result would have differed had Asbury's counsel objected to the instructions.

For his ineffective-assistance-of-counsel claim to succeed, Asbury must prove by a preponderance of the evidence that "(1) his counsel failed to perform an essential duty, and (2) prejudice resulted." *State v. Liddell*, 672 N.W.2d 805, 809 (Iowa 2003) (citation omitted). Because proof of both prongs of this test is required, should Asbury fail to prove prejudice we need not consider whether his trial counsel failed to perform an essential duty. *See State v. Oetken*, 613 N.W.2d 679, 684 (Iowa 2000). In this context, "prejudice must give rise to a reasonable probability the outcome of the proceeding would have been different had counsel not erred." *Id.*

As we have noted above, "[e]rrors in jury instructions are presumed prejudicial unless the record affirmatively establishes there was no prejudice." *Ambrose*, 861 N.W.2d at 554. Jury instructions should not assume disputed facts existed or were proven. *State v. Hubbard*, 250 N.W. 891, 891 (Iowa 1933). We acknowledge the identity of the shooter was a disputed fact and agree the instructions could have been drafted in a more fact-neutral, balanced fashion. *See State v. Huser*, 894 N.W.2d 472, 502 (Iowa 2017) (noting a defendant's proposed instruction was not "a balanced instruction designed to promote a fair trial"). But, here the record affirmatively establishes there was no prejudice. Reading the jury instructions in their entirety, it is clear the question of who shot Patton was the

central issue for the jury to decide. Both the challenged instructions reference elements of Instruction 17, the first-degree murder marshalling instruction, which required the State to prove "the defendant shot James Patton." Read together with Instruction 17, the challenged instructions do not assume the disputed fact was proved, and there was no reasonable probability the jury was misled or misdirected by the challenged instructions.

In addition, the record contains overwhelming evidence of Asbury's guilt. *See State v. Carey*, 709 N.W.2d 547, 559 (Iowa 2006) ("The most important factor under the test for prejudice is the strength of the State's case."). Even if the instructions had been crafted in a more fact-neutral fashion, there is no reasonable probability the jury's verdict would have been different.

Because Asbury has not shown he was prejudiced by his counsel's failure to object to the jury instructions, his claim of ineffective assistance of counsel fails. Because there is sufficient evidence to uphold the verdict and because Asbury was not prejudiced by his counsel's failure to object to the jury instructions, we affirm.

**AFFIRMED.**