STATE of Iowa, Appellee,

v.

John Burton FRANKLIN, Appellant.

No. 84–835.

Supreme Court of Iowa.

May 22, 1985.

Charles L. Harrington, Appellate Defender, and Raymond E. Rogers, Asst. Appellate Defender, for appellant.

Thomas J. Miller, Atty. Gen., Roxann M. Ryan, Asst. Atty. Gen., and Dan L. Johnston, Co. Atty., for appellee.

Considered by REYNOLDSON, C.J., and UHLENHOPP, HARRIS, LARSON and CARTER, JJ.

HARRIS, Justice.

Defendant lists five assignments of error in this appeal from his conviction of first-degree burglary. Iowa Code §§ 713.1 and 713.3 (1983). We find no reversible error and affirm.

On October 25, 1983, Catherine and Douglas Darby lived with their children in a first-floor apartment in Des Moines. At about 10:00 that evening Catherine heard a knock at an outside security door which entered a common hallway which served the apartment building. Entering the hallway, she turned off a light and looked through a window. She saw a group of about four, perhaps five, men waiting and recognized one of them, Dennis Kinney. Kinney asked Catherine if her husband were home.

Catherine flipped the lock on the security door but did not open it. She said, "Just a moment," and went to tell her husband they had company. Uninvited, the group followed her into the apartment. At this point Catherine also recognized defendant in the group. She did not know the others.

When Catherine went to the bedroom where her husband was asleep, some of the group, including defendant and Kinney, followed her. Douglas was still in his bed. Kinney, who seems to have been principal

spokesman for the group, angrily accused Douglas, in Douglas' words, of "trying to have him [Kinney] set up, [that is] to have a fellow that he [Kinney] had a long-standing argument with—to do bodily harm to him . . . ."

When Douglas denied the accusation, Kinney kicked him in the neck. Catherine tried to intercede and was forcibly removed from the bedroom. Kinney determined to rob Douglas of all weapons, money, and drugs from the house. An altercation followed. During a period when defendant was absent from the bedroom Douglas was severely beaten.

Defendant participated in the general ransacking of the apartment and the collecting of weapons and while doing so grabbed a machete. He then waved it around in a threatening manner in front of Catherine, Douglas, and their twelve-year old son and, according to Douglas, "told me in so many words that if I didn't shut up he was going to use the machete on me."

Eventually the weapons were piled up onto a blanket the group had gathered up and spread on the floor. In testifying of the weapons, Catherine listed the machete as one of them.

Defendant was tried before a jury which convicted him of first-degree burglary. We quote the three sections that make up the charge:

Any person, having the intent to commit a felony, assault or theft therein, who, having no right, license or privilege to do so, enters an occupied structure or area enclosed in such a manner as to provide a place for the keeping of valuable property secure from theft or criminal mischief, such occupied structure or place not being open to the public, or who remains therein after it is closed to the public or after the person's right, license or privilege to be there has expired, or any person having such intent who breaks an occupied structure or other place where anything of value is kept, commits burglary.

Iowa Code § 713.1 (1983).

A person commits burglary in the first degree if, while perpetrating a burglary, the person has in his or her possession an explosive or incendiary device or material, or a dangerous weapon, or intentionally or recklessly inflicts physical injury on any person. Burglary in the first degree is a class "B" felony.

Iowa Code § 713.3.

Dangerous Weapon. A "Dangerous weapon" is any instrument or device designed primarily for use in inflicting death or injury upon a human being or animal, and which is capable of inflicting death upon a human being when used in a manner for which it was designed. Additionally, any instrument or device of any sort whatsoever which is actually used in such a manner as to indicate that the defendant intends to inflict death or serious injury upon the other, and which, when so used, is capable of inflicting death upon a human being, is a dangerous weapon. Dangerous weapons include, but are not limited to, any offensive weapon, pistol, revolver, or other firearm, dagger, razor, stiletto, or knife having a blade of three inches or longer in length.

Iowa Code § 702.7.

I. Defendant contends the State failed to present sufficient evidence to prove he did not have a "right, license, or privilege to enter the Darby residence." Lack of such right, license or privilege is an element of burglary which must be proven by the State. Iowa Code § 713.1. We must of course affirm on this assignment if there is substantial evidence in the record to support the elements of the offense. *State v. Aldape*, 307 N.W.2d 32, 39 (Iowa 1981). We explained the standard for reviewing the question in *State v. Robinson*, 288 N.W.2d 337, 339 (Iowa 1980).

Defendant relies on *State v. King*, 344 N.W.2d 562, 563 (Iowa Ct.App.1983) as authority for his contention there was no showing of this necessary element. In *King* the accused was welcomed into the home in question. A cordial gathering was changed later into a fight. Defendant

presented somewhat similar facts here but the jury rejected them in favor of the State's far different version.

▮ Catherine's trial testimony conflicted somewhat with her pretrial statement. The jury was nevertheless entitled to believe her trial version of the events according to which defendant and his friends rushed into her home when she went to get her husband. Soon afterwards they were beating him. This is substantial evidence of defendant's lack of right, license, or privilege to enter the home.

Defendant's challenge to the sufficiency is also based on a legal argument. He contends the lack of consent must exist at the precise time the building was entered. There are two flaws in the contention; it is wrong both factually and conceptually.

On the facts, as gathered from the testimony taken in the light most consistent with the verdict, defendant and his group entered the apartment uninvited after Catherine told them "Just a minute." The jury could gather their intent at that time from what was later said and from the violent conduct which followed.

▮ Moreover, the burglary statute is not limited to persons who unlawfully *enter* a structure. Also included is a person "who remains therein after the person's right, license, or privilege to be there has expired...." § 713.1 Defendant's first assignment is without merit.

▮ II. Defendant's second assignment turns on whether a machete is a dangerous weapon. The question arose on defendant's motion for directed verdict of acquittal. Defendant points out that a machete is not listed in the statutory definition of a dangerous weapon under Iowa Code section 702.7.

There was much testimony about the machete but the record is silent on its construction, design, or dimensions. The State expressly relied upon the machete as a dangerous weapon and defendant's possession of it in order to elevate the burglary to first-degree under section 713.3.

The State cites a dictionary definition of machete: "a large, heavy knife used for cutting sugar cane and underbrush and as a weapon." Webster's *9th New Collegiate Dictionary*, p. 713 (1983). Support for the definition is also found in *Wiborg v. United States*, 163 U.S. 631, 16 S.Ct. 1127, 41 L.Ed. 289 (1896), in which the question was whether a group of sailors were on a military expedition. That question turned on whether they were equipped with weapons of war. Some of the items in question were machetes which the court described as follows:

> It is unquestioned that the machete is used for both war and peace, it being described in the Century Dictionary as a "heavy knife or cutlass, used among Spanish colonists and Spanish-American countries, both as a tool and as a weapon," and by Webster as a "large, heavy knife, resembling a broad-sword, often two or three feet in length, used by the inhabitants of Spanish America as a hatchet to cut their way through thicket, and for various other purposes."

*Id.* at 636, 16 S.Ct. at 1129, 41 L.Ed. at 291.

There was no error in the trial court's refusal to direct defendant's acquittal. A machete is a dangerous weapon.

III. There was no evidence the defendant, or anyone with him, possessed any other weapon at the time they entered the apartment. Defendant again contends the time of entry is crucial and controlling, that since he and his group were all unarmed at the time of entry the first-degree conviction cannot stand. *See* § 713.3 ("[a] person commits burglary in the first-degree if, *while perpetrating a burglary,* the person has ... possession [of] a dangerous weapon....") Emphasis added.

Defendant points out that the predecessor to section 713.3 expressly included, not only those armed "while [themselves] committing such burglary," but also those who "arm [themselves] after having entered...." Iowa Code section 708.2 (1977). Defendant thinks the omission of the description of the second alternative in the present section discloses a legislative intent

to delete the alternative group from inclusion for first-degree burglary.

There is force to this contention but we agree with the State that the legislature had no such intent. We start with the premise that the criminal code revision was primarily a restatement of prior law. *Emery v. Fenton,* 266 N.W.2d 6, 8 (Iowa 1978). Added to that premise is a larger concept of burglary plainly encompassed in the revised statute. Matters that occur after entry are of moment in elevating a burglary to first-degree: physical injury, possession of a weapon at any point while participating in the burglary. In another context (felony murder) we have included an act occurring an hour later as "in perpetration" of a felony. *State v. Conner,* 241 N.W.2d 447, 464 (Iowa 1976).

Under section 713.1 any burglary can be perpetrated either by (1) entering the structure or (2) by remaining in the structure after the right to be there has expired. First-degree burglary under section 713.3 can similarly be committed either of the two ways. Defendant had no right to remain in the apartment at the time he threatened Douglas with the machete. When he did so he was guilty of first-degree burglary.

The assignment is without merit.

IV. Another assignment challenges a jury instruction. The trial court gave a general definition of a dangerous weapon and refused defendant's request to limit that definition to a machete. Defendant relies on *State v. Willet,* 305 N.W.2d 454, 457 (Iowa 1981) (Where a crime may be committed in different ways, and the State specifies one of them, the offense must be proved and submitted in the way charged.)

Reliance on *Willet* is misplaced. The *Willet* holding was addressed to criminal statutes which (as does the present one) provide alternative manners in which a crime can be perpetrated. In such a case a defendant is entitled to know which of the two theories to defend against.

Defendant's assignment is not grounded on alternative theories in the statute. Defendant did not complain of the fact that the information charged him with burglary without limiting the charge to a single theory. After the State rested, and the court was advised there would be no evidence for the defense, the prosecutor volunteered that the State would rely, not on an assault, but on possession of a weapon. The State also agreed to rely only on the machete, not on the other weapons. The "theories" referred to in *Willet* do not include individual items of evidence, such as what sort of a weapon was used. The court was not bound, under *Willet,* to fashion an individual instruction dealing with machetes.

Throughout the trial defendant vigorously contended the machete was not shown to be a dangerous weapon. He not only moved for a directed verdict on that basis but also objected to the instructions dealing with dangerous weapons on the ground there was no evidence to support them. As to one of the instructions (no. 9 which defined various terms, including dangerous weapons) defendant added that it "is not specific enough and that it doesn't specifically refer to this machete, which is what the State alleges is the dangerous weapon that was used in this case."

On appeal defendant argues that the jury could have found him guilty for possessing one of the other dangerous weapons stolen from the house but upon which the State did not rely. The instructions would have been improved by an explanation that the State did rely on the machete as the dangerous weapon involved in the offense. We however think the omission does not demand a reversal under the record here.

We agree with the State that any error was harmless. The prosecutor agreed to argue to the jury that defendant possessed the machete and agreed to do so "without any description as to what it might be or what she perceives it to be...." We have no reason to suppose she did not keep her bargain or that she in any way suggested

the State relied on any other weapon. The jury was not misled.

There was no reversible error.

 V. We have not overlooked defendant's challenge to an instruction which, he claims, informed the jury that it could consider the lack of his evidence in determining guilt. He argues the effect was to comment on his failure to testify. *See State v. Osmundson*, 241 N.W.2d 892, 893 (Iowa 1976). The assignment falls within the holding in *State v. Jeffries*, 313 N.W.2d 508, 509 (Iowa 1981). There was no reversible error. *Cf. State v. Winders*, 359 N.W.2d 417, 419–20 (Iowa 1984) (disapproved instruction, in contrast to the one here, placed onus on defendant to rebut a presumption).

AFFIRMED.