# IN THE COURT OF APPEALS OF IOWA

No. 18-0322
Filed July 24, 2019

**DEVON LUKINICH,**
Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
Respondent-Appellee.
_____

Appeal from the Iowa District Court for Des Moines County, Mark E. Kruse, Judge.

Devon Lukinich appeals the denial of his application for postconviction relief. **AFFIRMED.**

Angela Campbell of Dickey & Campbell Law Firm, PLC, Des Moines, for appellant.

Thomas J. Miller, Attorney General, and Kyle P. Hanson, Assistant Attorney General, for appellee State.

Considered by Potterfield, P.J., and Tabor and Bower, JJ.

**POTTERFIELD, Presiding Judge.**

Devon Lukinich appeals the denial of his postconviction-relief (PCR) application. Lukinich and his girlfriend, Desirae Pearson, were convicted after a joint jury trial of two counts of first-degree robbery and two counts of first-degree burglary for their actions at two homes on Thanksgiving 2010 when Lukinich was eighteen years old and Pearson was seventeen years old.[1] Lukinich first raised his ineffective-assistance-of-counsel claims on direct appeal from his judgment and sentence, where a panel of this court preserved his claims for PCR. *State v. Lukinich*, No. 11-1306, 2012 WL 3860742, at *4 (Iowa Ct. App. Sept. 6, 2012). Lukinich filed his PCR application and alleged his trial counsel provided ineffective assistance through ten different errors or omissions. The district court denied Lukinich's PCR application, and he appealed.

## I. Background Facts and Proceedings

The Iowa Supreme Court summarized the relevant background facts of this appeal in its decision vacating Desirae Pearson's conviction:

> On November 25, 2010 Pearson and her boyfriend, Devon Lukinich, armed themselves with BB guns that looked like handguns and went on a robbery spree in Burlington and West Burlington. . . . Pearson and Lukinich wore bandanas to conceal their faces and gloves to guard against leaving fingerprints. Pearson also wore a parka with a fur-lined hood pulled over her head.
> Around 9:15 p.m., Pearson and Lukinich were allegedly involved in an altercation with a Burlington resident that led to a 911 call. Though Pearson and Lukinich had fled the scene by the time police arrived, the resident relayed information about Pearson's

---

[1] The Iowa Supreme Court subsequently determined Pearson's sentence was unconstitutional because she was a juvenile at the time of the crime and remanded the case to the district court. *State v. Pearson*, 836 N.W.2d 88, 97 (Iowa 2013).

vehicle to police, who then put out the description of the vehicle to officers in the area.

Around 9:45 p.m., Pearson and Lukinich knocked on the door of Zachary Moore. When Moore opened the door, Pearson pointed her BB gun at Moore and told him that he was being robbed. Lukinich then informed Moore that Pearson was not joking and that he would shoot him if Pearson would not. Lukinich told Moore he was looking for the "weed money" as well as two individuals. Moore testified he laid on the floor while the pair took his laptop, television, iPod, a handheld videogame game system, a small global positioning device (GPS), and some cash.

. . . .

Later that night, Pearson and Lukinich entered the home of Joan Wright, an eighty-one-year-old woman, and her son, Ronald Wright. At the time, Joan was in bed and Ronald was in the basement. Lukinich climbed through a kitchen window and opened a door for Pearson. Pearson took cash out of a purse that was sitting on the kitchen table. The pair also took three pill bottles containing prescription medication. Lukinich then went into an unoccupied bedroom, while Pearson stood in the hallway just outside the doorway. After hearing noises and seeing the shadows of people she did not recognize, Joan got out of bed to investigate. She saw Lukinich in her son's bedroom, holding Ronald's two shotguns in their cases. Lukinich told Joan to go back to her bedroom, and Pearson told Joan to do as she was told. Lukinich and Pearson then opened their jackets, revealing the BB guns. When Joan yelled to her son that they were being robbed, Lukinich pushed her backward into a doorframe. The force of the blow fractured her shoulder. Lukinich decided to take one of Ronald's shotguns, and the pair left the home. Police responded to the Wrights' home around 11:44 p.m.

Just moments after they left the Wrights' home, police apprehended Pearson and Lukinich in their car. . . . When the officers first viewed the BB guns in the trunk of the vehicle, the officers thought the weapons were real handguns. One of the BB guns bore a strong resemblance to a Glock model 30 handgun and the other to a Taurus PT 1911 handgun.

*State v. Pearson*, 836 N.W.2d 88, 90–91 (Iowa 2013).

Lukinich was charged with two counts of first-degree burglary and two counts of first-degree robbery as well as criminal mischief arising from a third

incident that evening.  Significant to this appeal, an element of both first-degree burglary and first-degree robbery charges is that the defendant had a "dangerous weapon" while committing the crime.  *See* Iowa Code §§ 711.2 (2009) ("A person commits robbery in the first degree when, while perpetrating a robbery, the person . . . is armed with a dangerous weapon."); 713.3(1)(b) ("A person commits burglary in the first degree if, while perpetrating a burglary . . . [t]he person has possession of a dangerous weapon.").

A jury convicted Lukinich of the first-degree burglary and first-degree robbery charges but deadlocked on the criminal-mischief charge.  The district court entered judgment and sentence and imposed the seventy percent mandatory minimum sentence a for first-degree robbery conviction under section 902.12(5).  Lukinich appealed.  He made three arguments: the district court erred by failing to give the jury a special interrogatory on the question of whether he committed the crimes while in possession of a dangerous weapon; insufficient evidence showed the BB guns used in the crimes were "dangerous weapons" within the meaning of the first-degree robbery and first-degree burglary statutes; and trial counsel was ineffective for failing to hire a ballistics expert to assist in challenging the testimony of the State's ballistics expert.

On the substantial evidence issue, a panel of our court concluded the evidence on the record supported the jury's finding that the BB guns were "dangerous weapons."[2]  *Lukinich*, 2012 WL 3860742, at *3.  The State's ballistics

---

[2] The jury was instructed:

> [A] dangerous weapon is any device or instrument designed primarily for use in inflicting death or injury, and when used in its designed manner is capable of inflicting death.  It is also any sort of instrument or device

expert's testimony demonstrated the BB guns were "designed primarily for use in inflicting death or injury"; the witness had tested the BB guns and found they shot pellets fast enough to break a person's skin or penetrate their eye and cause serious injury or kill. *Id.* Other evidence showed the BB gun was a "device of any sort whatsoever which is actually used in such a way as to indicate that the user intended to inflict death or serious injury":

> The record further reveals that Lukinich and his co-defendant came to Moore's house. When Moore opened the door, Lukinich's co-defendant pointed a gun "right at" him and said this was a robbery. Lukinich then stated, "If she won't shoot you, I will." Moore assumed Lukinich also had a gun, as he placed a metal object on the coffee table after he entered the home. He testified he believed the gun was real.
> Wright similarly testified that both Lukinich and Pearson had pistols and they "kind of opened their jackets and showed" them to her during the robbery. While she did not know whether the guns were "real," she stated, "I'm sure they were pistols."

*Id.*

On the State's suggestion, our court evaluated Lukinich's special interrogatory claim under an ineffective-assistance-of-counsel framework. *Id.* at *1. We concluded his trial counsel did not breach an essential duty by failing to insist on the special interrogatory. *Id.* The panel preserved for PCR Lukinich's ineffective-assistance-of-counsel claim regarding trial counsel's failure to hire a ballistics expert to challenge the State's ballistics expert's testimony. *Id.* at *4.

Lukinich filed his PCR application on February 7, 2013. He then filed several amendments, and his fourth amended PCR application was submitted

---

actually used in such a way as to indicate the user intended to inflict death or serious injury, and when so used is capable of inflicting death.
This definition largely tracks the language of Iowa Code section 702.7 (2010), which defines "dangerous weapon."

with briefs and a stipulated record. The PCR application cites ten instances of alleged ineffective-assistance-of-counsel. The district court denied Lukinich's claim on each allegation. On appeal, Lukinich argues the district court erred by denying his ineffective-assistance-of-counsel claims related to his trial counsel's conduct for four of the allegations made in the PCR application: (1) failing to have a ballistics expert testify; (2) failing to object when the prosecutor improperly stated during closing arguments that BB guns are dangerous weapons "under the law"; (3) failing to object to instructions and arguments that the shotguns stolen from Joan Wright's house met the armed with a "dangerous weapon" requirement; and (4) failing to present an expert witness at sentencing regarding Lukinich's brain maturity.

## II. Standard of Review

Claims for ineffective-assistance-of-counsel are grounded in the Sixth Amendment to the United States Constitution and are reviewed de novo. *State v. Albright*, 925 N.W.2d 144, 151 (Iowa 2019); *see also* U.S. Const. amend. VI.

## III. Discussion

To prevail on his claims of ineffective assistance, Lukinich must show (1) that his counsel failed to perform an essential duty and (2) that prejudice resulted. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).

To show counsel failed to perform an essential duty, a claimant must show counsel "made errors so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment." *Albright*, 925 N.W.2d at 151. Counsel is presumed competent, and their conduct is measured "against the standard of a reasonably competent practitioner." *Id.* "We objectively consider whether

counsel's performance was reasonable under prevailing professional norms in light of all of the circumstances. In making this determination, we avoid second-guessing or making hindsight evaluations." *Id.* (citations omitted).

To show counsel's failure to perform an essential duty was prejudicial, a claimant must show "there is a reasonable probability that the outcome of the proceeding would have been different but for counsel's unprofessional errors." *Id.* Prejudice is shown when "the probability of a different result is 'sufficient to undermine confidence in the outcome.'" *Id.* at 152 (quoting *Bowman v. State*, 710 N.W.2d 200, 206 (Iowa 2006)). "This standard requires us to consider the totality of the evidence, identify what factual findings would have been affected, and determine if the error was pervasive or isolated and trivial." *State v. Ambrose*, 861 N.W.2d 550, 557 (Iowa 2015).

### a. Failure to Present Ballistics Expert Testimony

Lukinich argues his trial counsel provided ineffective assistance by failing to introduce expert testimony to rebut the State's ballistics expert's testimony. He points to the deposition and opinion letter of his own ballistics expert from the PCR proceedings, Daniel O'Kelly, to show hiring his own expert witness would have changed the result at trial. The PCR court considered this evidence and concluded trial counsel was not ineffective. After reviewing the record, we agree.

The record shows trial counsel considered hiring a ballistics expert but chose not to. Counsel believed "a case" held that BB guns powered by $CO_2$, like the ones recovered at the time Pearson and Lukinich were apprehended, could be considered deadly weapons and he discussed this issue with Pearson's counsel. The record does not reflect what legal research trial counsel performed

on this point, although on appeal the State identifies controlling precedent standing for the proposition that $CO_2$-powered BB guns are dangerous weapons within the meaning of section 702.7. *See State v. Dallen*, 452 N.W.2d 398, 399 (Iowa 1990) (concluding a $CO_2$-powered BB that shot pellets with enough velocity to pierce skin and cause bleeding was a "dangerous weapon").

Even if trial counsel breached an essential duty by failing to hire an expert witness, Lukinich has not met his burden to show that failure was prejudicial. O'Kelly's deposition does not provide substantially different information than that to which the State's expert testified on direct and cross-examination at trial. Both agree BB guns shooting pellets at least 350 feet per second could pierce skin. Both measured the BB guns used by Lukinich and concluded the guns fired faster than 350 feet per second. The State's ballistics expert admitted on cross-examination that he had performed his tests on the BB guns when they had been given new $CO_2$ cartridges, and O'Kelly stated one BB gun became inoperable from lack of $CO_2$ after six weeks, and the other became inoperable from lack of $CO_2$ after two days.

Despite their similar measurements, O'Kelly concluded the BB guns were not "dangerous weapons." This conclusion seems to rely on his personal experience with BB guns rather than scientific research and inquiry. In his deposition, O'Kelly noted he had spoken with a representative from one of the BB gun's manufacturers and this representative informed him BB guns shooting pellets over 350 feet per second could seriously injure or kill a person. Additionally, O'Kelly admitted he did not perform research on incidents of people

being shot with BB guns at close range, the frequency of BB gun-related injuries in the United States, nor the velocity at which BB gun pellets can pierce skin.

We have held that no breach of an essential duty nor prejudice occurs when counsel does not call an expert witness who offers testimony that is "in most respect very similar" to that of another expert. *Moon v. State*, No. 05-0816, 2007 WL 1345732, at *3 (Iowa Ct. App. May 9, 2007). Both experts measured shots fired from the BB guns and concluded they fired pellets faster than 350 feet per second. The State's ballistics expert testified that BB gun pellets will pierce skin at that velocity. BB guns that fire pellets fast enough to pierce skin are "dangerous weapons." *Dallen*, 452 N.W.2d at 399. O'Kelly's testimony at trial would have provided little information that differs from the State's ballistics expert's testimony apart from his conclusions. We conclude trial counsel did not provide ineffective assistance by failing to call an independent expert ballistics expert.

### b. Failure to Object to Prosecutor's Statements During Closing Argument

Lukinich next argues his trial counsel provided ineffective assistance by failing to object to the prosecutor's characterization of the BB guns as "a dangerous weapon under the law" twice during closing arguments. "We start with the principle that, '[i]n closing arguments, counsel is allowed some latitude. Counsel may draw conclusions and argue permissible inferences which reasonably flow from the evidence presented.'" *State v. Carey*, 709 N.W.2d 547, 554 (Iowa 2006) (alteration in original) (quoting *State v. Thornton*, 498 N.W.2d

670, 676 (Iowa 1993)). But "[t]he prosecutor also cannot misstate the law." *State v. Shanahan*, 712 N.W.2d 121, 140 (Iowa 2006).

Even if we conclude trial counsel should have objected to the prosecutor's statements, we cannot conclude prejudice resulted. Before closing arguments, the trial court cautioned the jury that "[the closing arguments] are not evidence, nor should they be construed by you as evidence or instructions on the law." Pearson's attorney directly addressed the prosecutor's statements, telling the jury "[the prosecutor] in his closing told you that under the law these BB guns are dangerous weapons, and that is not completely accurate. It's up to you to decide." Trial counsel also discussed at length that the prosecution needed to prove the BB guns were dangerous weapons within the meaning of the jury instructions. Finally, the prosecutor clarified his earlier remark in his rebuttal, saying

> what we attorneys say to you about arguments, what we say to you about the evidence, what we say to you about the law is not evidence. Our arguments are not evidence, and what we say about the law is not—that is not the law. The law is what the judge gave you.

In light of these statements, Lukinich has not met his burden to show there is a reasonable probability the outcome of the proceeding would have been different but for the statements made by the prosecution in his closing argument.

### c. Failure to Object to Stolen-Shotgun Arguments and Instructions

Lukinich next argues trial counsel was ineffective for failing to object to the jury instructions and portions of the prosecutor's closing arguments that could lead the jury to conclude the unloaded, cased shotguns Lukinich took from Joan

Wright's home could satisfy the element for possession of a dangerous weapon in both the robbery and burglary charges. For the burglary charges, the jury was instructed

> [T]he State need not prove that the defendant possessed a dangerous weapon at the time of entry into the residence. If the defendant was in possession of a dangerous weapon at any point while participating in the burglary, then the State has proven the defendant was armed with a dangerous weapon.

For the robbery charges, the jury was instructed "[t]o be 'armed' means the individual had a dangerous weapon on his or her person at the time of the crime. It is not necessary the dangerous weapon be used, displayed, or represented as being in the defendants' possession." During closing arguments, the prosecutor told the jury that the State fulfilled the dangerous weapon element of both charges related to Lukinich's actions at Joan Wright's house by showing Lukinich had "armed himself with that shotgun." The instructions and statement by the prosecutor, Lukinich asserts, improperly led the jury to believe they could find the State proved the element of being armed with a dangerous weapon by showing Lukinich carried the stolen cased shotgun.

Shotguns and other firearms are per se dangerous weapons. *See* Iowa Code § 702.7 ("Dangerous weapons include but are not limited to any . . . pistol, revolver, or other firearm."); *State v. Kenney*, 334 N.W.2d 733, 733–34 (Iowa 1983) (discussing shotguns and concluding "[s]uch weapons certainly fit the definition of firearm"); *State v. Durham*, 323 N.W.2d 243, 244 (Iowa 1982) (analyzing section 702.7 and concluding each of the items listed in the last sentence of that provision are "dangerous weapons by reason of that provision"). Firearms do not need to be operable to be dangerous weapons. *State v.*

*Ashland*, 145 N.W.2d 910, 911 (Iowa 1966). The only issue, then, is whether the manner in which Lukinich obtained and controlled the shotguns—by stealing the guns and holding the shotguns in their cases—was sufficient to allow the jury to convict him of first-degree burglary and first-degree robbery.

We first turn to the burglary statute. A person can be convicted of first-degree burglary when "'[t]he person has *possession* of a dangerous weapon" during the commission of a burglary. Iowa Code § 713.3 (emphasis added). The Iowa Supreme Court evaluated this provision in *State v. Oetken*, 613 N.W.2d 679 (Iowa 2000). In *Oetken*, the defendant stole three firearms while burglarizing two homes. *Id.* at 685. The court concluded the defendant "possessed" the guns:

> There was sufficient evidence for the jury to adduce Oetken had possession of a weapon at some point during the commission of the crimes.
> . . . [T]he statute [does not] require a weapon to be used or brandished. . . . .
> . . . [T]he legislature prohibited the mere possession of a dangerous weapon as opposed to its use. This likely indicates the policy underlying the statute is to prohibit felons from possessing, transporting, or transferring guns, rather than simply using them during the commission of a crime.

*Id.*; *see also State v. Eickelberg*, 574 N.W.2d 1, 3 (Iowa 1997) (concluding a defendant had "immediate possession" of a firearm where an unloaded gun was found in its case and on a rack when police searched the defendant's home); *State v. Franklin*, 368 N.W.2d 716, 720 (Iowa 1985) ("Matters that occur after entry are of moment in elevating a burglary to first-degree: physical injury, possession of a weapon at any point while participating in the burglary."). Similarly, Lukinich possessed the Wrights' shotguns when he took the cased guns. Trial counsel did not breach an essential duty by failing to object to the

jury instructions and portion of the prosecutor's closing argument that may have led the jury to believe Lukinich could be found guilty of burglary based on his actions at Joan Wright's house.

The next question is whether trial counsel erred by failing to object to the jury instructions and statements that permitted the jury to find Lukinich guilty of first-degree robbery based on the stolen shotgun. A person can be convicted of first-degree robbery when "the person . . . is *armed* with a dangerous weapon." *Id.* § 711.2 (emphasis added). The jury instruction defining "armed" closely followed the Iowa State Bar Association's uniform jury instruction for "Displaying A Firearm - Armed With A Firearm."[3] "Normally, we are slow to disapprove of the uniform jury instructions." *State v. Ambrose*, 861 N.W.2d 550, 559 (Iowa 2015); see also *State v. Ledesma*, No.18-0253, 2018 WL 5291356, at *3 (Iowa Ct. App. Oct. 24, 2018) ("The uniform jury instruction[s are] not binding, but they are entitled to respectful consideration.").

"Armed" is generally given its ordinary definition. *Everett v. State*, 789 N.W.2d 151, 160 (Iowa 2010) ("The ordinary definition of 'armed' is easily comprehended as meaning equipped with a weapon."). The court in *Everett* treated "armed" to mean "possessed." *Id.* at 160 (noting that, had the jury instruction on first-degree robbery read "the defendant must *actually* be armed, that is, possess a weapon," that would be a correct statement of the law). Similarly to "possess," use or threatened use of the firearm is not required. *State*

---

[3] The current version of this instruction reads, "To be armed means the defendant had a firearm on [his] [her] person at the time of the crime. It is not necessary the firearm was used, displayed or represented as being in [his] [her] possession." Iowa State B. Ass'n, Iowa Criminal Jury Instruction 200.23 (2017).

*v. Law*, 306 N.W.2d 756, 760 (Iowa 1981) ("A person who is 'armed' under the robbery statute would not necessarily be pointing a firearm or displaying a dangerous weapon in a threatening manner."), *abrogated on other grounds by State v. Wales*, 325 N.W.2d 87, 89 (Iowa 1982). The interpretation of "armed," like "possessed," is supported by academic discussion of section 711.2 from when the current criminal code was adopted. *See* Kermit L. Dunahoo, *The New Iowa Criminal Code*, 29 Drake L. Rev. 237, 396 (1979–80) (criticizing the grading of robbery offenses because "merely having a 'dangerous weapon' in the robber's possession" and "infliction of serious injury" in the course of a robbery are both graded as first-degree robbery); 4 J. Yeager & R. Carlson, Iowa Practice § 253 (1979) (discussing the intent requirement in the previous section 711.2, and noting "possession by a robber of a dangerous weapon was in itself a sufficient showing of his intent"). In light of this understanding of "armed," the jury instructions and the prosecutor's statement about Lukinich's possession of the shotguns did not misstate the law.

The evidence against Lukinich for both the burglary and robbery charges included Lukinich's actions at Joan Wright's house and his handling of the shotguns he took from the Wrights. Trial counsel did not breach an essential duty by failing to object to the jury instructions or the prosecutor's statement during his closing argument.

### d. Failure to Present Brain Maturity Expert Testimony

Finally, Lukinich argues trial counsel erred by failing to hire an expert to discuss his brain maturity. Lukinich turned eighteen only eighty-eight days before the events of Thanksgiving 2010, and Pearson was seventeen at the time.

Lukinich contends his sentence was cruel and unusual punishment within the meaning of the Eighth Amendment to the U.S. Constitution and article I, section 17 of the Iowa Constitution, and trial counsel's failure to provide mitigating evidence and argument at his sentencing violated the Sixth Amendment to the U.S. Constitution and article I, section 10 of the Iowa Constitution. To support this assertion, Lukinich cites *Pearson* and the *Roper-Graham-Miller* line of cases[4] and contends "[t]here was and is no rational difference between a juvenile's brain at age 17 and 364 days and an individual's brain 88 days later" and there should not be "a bright line at age 18 for the relief in juvenile mandatory minimums as articulated in [*State v.*] *Pearson.*" After reviewing the record, we find trial counsel did not breach an essential duty by failing to hire an expert to discuss Lukinich's brain development.

The line of cases Lukinich cites discusses juvenile sentencing. While "the human brain continues to develop into the early twenties," *State v. Null*, 836 N.W.2d 41, 55 (Iowa 2013), the line between a juvenile and an adult is age eighteen for Eighth Amendment purposes. *Roper*, 543 U.S. at 574; *State v. Seats*, 865 N.W.2d 545, 556–57 (Iowa 2015). Lukinich was an adult on Thanksgiving 2010, and precedent controlling juvenile sentencing was inapplicable to him. We have repeatedly rejected in prior cases Lukinich's argument that juvenile sentencing principles should apply to young adults. *See Smith v. State*, No. 16-1711, 2017 WL 3283311, at *2 (Iowa Ct. App. Aug. 2,

---

[4] *Miller v. Alabama*, 567 U.S. 460 (2012); *Graham v. Florida*, 560 U.S. 48 (2010); *Roper v. Simmons*, 543 U.S. 551 (2004).

2017) (collecting cases).  Trial counsel was not ineffective for failing to make an argument based on inapplicable law.

**AFFIRMED.**